NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000765
27-JAN-2020
09:32 AM

NO. CAAP-16-0000765

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
BYUNG SOO CHOI, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 15-1-183K)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Defendant-Appellant Byung Soo Choi (Choi) appeals from
the Judgment of Conviction and Probation Sentence entered
October 3, 2016.[1] Following a jury trial, Choi was found guilty
of Commercial Promotion of Marijuana in the Second Degree in
violation of Hawaiʻi Revised Statutes (HRS) § 712-1249.5(1)(a)
(2014),[2] and Prohibited Acts Related to Drug Paraphernalia in
violation of HRS § 329-43.5 (2010).[3,4] Choi was sentenced to

---

[1]    The Honorable Ronald Ibarra entered the judgment and presided at
most of the proceedings, except for one day of trial, August 2, 2016, when the
Honorable Melvin Fujino presided.

[2]    HRS § 712-1249.5(a) provides, in relevant part, that "(1) A person
commits the offense of commercial promotion of marijuana in the second degree
if the person knowingly:  (a) Possesses marijuana having an aggregate weight
of two pounds or more[.]"

[3]    At the time of Choi's indictment, HRS § 329-43.5(a) provided in
relevant part:

> It is unlawful for any person to use, or to possess with
> intent to use, drug paraphernalia to plant, propagate,
> cultivate, grow, harvest, manufacture, compound, convert,
> produce, process, prepare, test, analyze, pack, repack,
> store, contain, conceal, inject, ingest, inhale, or
> otherwise introduce into the human body a controlled

(continued...)

concurrent four-year terms of probation with special conditions including imprisonment for 18 months for the promotion charge and 12 months for the paraphernalia charge.

On appeal, Choi contends the Circuit Court violated his constitutional right to confrontation when it admitted certificates attesting to the accuracy of the drug lab's testing equipment, erred in admitting expert testimony on the weight and identification of plant material seized from Choi's home, and erred in entering judgment where there was insufficient evidence to support a conviction.[5]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Choi's points on appeal as follows and affirm.

1.     Admission of the balance certificates did not implicate the confrontation clause and fell within the business record exception to the hearsay rule.  While the confrontation

---

(...continued)

substance in violation of this chapter.  Any person who violates this section is guilty of a Class C felony and upon conviction may be imprisoned pursuant to section 706-660 and, if appropriate as provided in section 706-641, fined pursuant to section 706-640.

The statute was subsequently amended to remove the possibility of imprisonment and set the punishment as a fine of $500.  See HRS § 329-43.5(a) (Supp. 2017).

[4]     Choi was also found not guilty on a charge of Attempted Promotion of a Detrimental Drug in the First Degree in violation of HRS §§ 705-500(1)(b) (2014) and 712-1247(1)(h) (2014).

[5]     Appellant's Opening Brief does not comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28.  First, the statement of the case cites broadly to each witnesses' testimony and lacks "record references supporting each statement of fact[.]"  HRAP 28(b)(3).  Second, the references to the record presented do not provide JEFS docket numbers or electronic page citations, also violating HRAP 28(b)(3).  Third, the statement of points of error provides only very broad citations as to "where in the record the alleged error occurred," in violation of subpart (ii), which requires the appellant to cite where the error was objected to, and quote "the grounds urged for the objection and the full substance of the evidence admitted or rejected."  HRAP 28(b)(4)(ii), (iii) and (iii)(A).  Rule 28(b)(4) provides that "[p]oints not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented."  However, as this court endeavors to reach the merits of a party's appeal, we will proceed to consider Choi's arguments to the extent possible.

Counsel is advised that future violations may result in sanctions. HRAP Rule 51.

2

clause in art. 1, sect. 14[6] of Hawaii Constitution "affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses[,]'" State v. Fields, 115 Hawai'i 503, 512, 168 P.3d 955, 964 (2007) (citation and internal quotation marks omitted), under Davis v. Washington, 547 U.S. 813, 814 (2006), "the federal confrontation clause applies only to testimonial hearsay[,]" and the nearly-identical confrontation clause in the Hawai'i constitution also applies only to testimonial hearsay. Fields, 115 Hawai'i at 514, 168 P.3d at 966. Documents for which a foundation as business records have been properly laid, are "not created for use in a particular dispute" and "more akin to documents that reflect the results of regularly conducted tests," State v. Fitzwater, 122 Hawai'i 354, 364, 227 P.3d 520, 530 (2010), do not offend the confrontation clause as they are not testimonial. See State v. West, 135 Hawai'i 406, 353 P.3d 409, CAAP-12-0000717, 2015 WL 3422156 at *4 (App. May 27, 2015) (SDO) ("Documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.") (citation, internal quotation marks, and brackets omitted); State v. Cruz, 135 Hawai'i 294, 298, 349 P.3d 401, 405 (App. 2015), cert. dismissed as improvidently granted, No. SCWC-12-0000477, 2018 WL 1611669 (Apr. 3, 2018) (cell phone providers' call logs for a defendant's telephone number deemed nontestimonial).

In this case, the reports certifying that the balances were correctly calibrated were not particular to Choi. The certificates were not designed primarily to establish or prove some past fact that could then be used to support a conviction of accused, but were a "record of routine, nonadversarial matters made in a nonadversarial setting." State v. Marshall, 114 Hawai'i 396, 401, 163 P.3d 199, 204 (App. 2007) (citation and internal quotation marks omitted). Because the balance

---

6    Hawai'i's confrontation clause reads, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused, . . . to have compulsory process for obtaining witnesses in the accused's favor[.]" Haw. Const. art. I, § 14.

certificates were not testimonial, their admission does not implicate the confrontation clause under the Hawai'i or federal constitutions. See Fields, 115 Hawai'i at 514, 168 P.3d at 966; Fitzwater, 122 Hawai'i at 358, 371, 227 P.3d at 534, 537.

Choi, citing Fields, also urges this court to apply the test found in Ohio v. Roberts, 448 U.S. 56 (1980) abrogated by Crawford v. Washington, 541 U.S. 36 (2004), which "requir[es] a showing that (1) the declarant is 'unavailable,' and (2) the statement bears some indicia of reliability[.]" Fields expressly found "the 'unavailability' paradigm is retained in both testimonial and nontestimonial situations[.]" 115 Hawai'i at 528, 168 P.3d at 980. However, this court noted that "Roberts stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding" and that hearsay that qualifies for a "firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." State v. Ofa, 9 Haw. App. 130, 138, 828 P.2d 813, 818 (1992) (quoting White v. Illinois, 502 U.S. 346 (1992) (emphasis added)). The documents at issue here, made as a part of the routine workings of the Honolulu Police Department (HPD) laboratory, were not made "in the course of a prior judicial proceeding" and are therefore not subject to an "unavailability" analysis under Roberts. Moreover, as business records qualify under a "firmly rooted" exception to the hearsay rule, reliability can be inferred. Roberts, 448 U.S. at 66.

Finally, Choi's objections during trial (i.e., "hearsay, confrontation under Fields") did not specify that Choi opposed the balance checks' admissibility on the grounds that HRE Rule 803(b)(6) was not satisfied. To the extent that Choi's first point on appeal is based on a claim that the balance certificates did not fall under the HRE 803(b)(6) hearsay exception,[7] it is waived as unpreserved at trial. See State v.

---

[7]     On appeal, Choi, citing to State v. Cruz, 135 Hawai'i 294, 349 P.3d 401 (App. 2015), posits that the custodian of records from the balance manufacturer "was necessary to authenticate the documents under HRE 803(b)(6)." Cruz is distinguishable from the facts here inasmuch as we were asked to review whether admission of a self-authenticating record under HRE

(continued...)

4

<u>Wallace</u>, 80 Hawai'i 382, 410, 910 P.2d 695, 723 (1996) ("an issue raised for the first time on appeal will not be considered by the reviewing court"); HRE Rule 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n the case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]")

      2.    Choi challenges the testimony of Edward Oshiro (Oshiro), the criminalist who testified to the weight and identification of the marijuana, on two grounds:  (a) that he was not qualified to render an opinion regarding the identity of the drug, and (b) there was no showing that his training to use the electronic balances met the requirements of the manufacturers of those balances.

      (a)    Choi asserts, *ipse dixit*, that "[t]here was insufficient testimony that Oshiro was qualified to render an opinion regarding whether the evidence collected belonged to what family of plant" because there was no testimony that he had training "identifying the physical characteristics of organic controlled substances such as mushrooms or marijuana plants" and he was a chemist and not a botanist, and "therefore unqualified to render an opinion regarding whether the evidence collected belonged to what family of plant."  Choi's argument is without merit.  Choi testified that, in addition to his specialized training in the identification of drugs and degree in chemistry, he had twenty-nine years' experience in forensics and drug analysis, and worked thousands of cases analyzing substances believed to be marijuana and had been qualified as an expert approximately 700 times.  Thus, he appears to have had "such skill, knowledge, or experience in the field in question as to

---

    [7](...continued)
Rule 901 violated the confrontation clause.  We held that it does not.  <u>See id.</u>, at 349, P.3d at 404-05.  In any event, in <u>Fitzwater</u>, our supreme court recognized that a person could serve as a "qualified witness" to establish foundation for a business record under HRE Rule 803(b)(6) even if the person was not an employee of the business who created the document.  122 Hawai'i at 366, 227 P.3d at 532.

make it appear that his opinion or inference-drawing would probably aid the trier of fact in arriving at the truth[.]" State v. Fukagawa, 100 Hawai'i 498, 504, 60 P.3d 899, 905 (2002) (citation omitted). The Circuit Court did not abuse its discretion in certifying Oshiro as an expert.

(b) Choi argues that "[t]here was no showing that the nature and extent of Oshiro's training to use the electronic balances met the requirements of the manufacturers of those balances." (Formatting and capitalization altered). At trial, Choi objected to Oshiro's testimony regarding the weight on the basis "foundation, Manewa."[8] No further argument was made. Choi's argument on appeal appears to contest Oshiro's testimony as to the results of tests he performed, i.e., the weight of the marijuana seized.

Choi offers no reason why a manufacturer's requirements are more instructive in how to use a balance than generally accepted scientific principles. In State v. Eid, 126 Hawai'i 430, 272 P.3d 1197 (2012), the Hawai'i Supreme Court concluded that the silence in the record regarding the identity of the manufacturer of parts of the speedometer dynometer (the machine used to calibrate the speedometer of a police car) and therefore what that manufacturer's training requirements were, was "not material, since their operation was straightforward and within the expertise of . . . licensed mechanics." 126 Hawai'i at 445, 272 P.3d at 1212. State v. Amiral -- a case relied upon by Choi -- suggests that, following Eid, "in the absence of manufacturer's recommendations as to training, the State can

---

[8]    In State v. Manewa, the Hawai'i Supreme Court found there was no foundation to admit testimony regarding the readings from an analytical balance:

> the evidence failed to establish (1) that [the testifying HPD criminalist] had any training or expertise in calibrating the balance, (2) that the balance had been properly calibrated by the manufacturer's service representatives, (3) that there was an accepted manufacturer's established procedure for 'verifying and validating' that the balance was in proper working order and that if such a procedure existed, that [the criminalist] followed it, and (4) that his balance was in proper working order at the time the evidence was weighed.

115 Hawai'i 343, 354, 167 P.3d 336, 347 (2007) (brackets omitted).

utilize other means to establish that the operator had the necessary training and expertise." 132 Hawai'i 170, 181, 319 P.3d 1178, 1189 (2014).

If Oshiro was properly qualified to testify under HRE Rule 703, he is a qualified to testify to a scientific opinion under HRE Rule 702. Rule 702 states that "the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert." Oshiro, a college-educated chemist with almost 30 years experience in a lab, testified that he checked the balance according to generally accepted principles and that uncertainties or margin of error in the balances was less than one percent.[9] See also Kamaile Nichols, Richard Wallsgrove, Chief Justice Moon's Criminal Past, 33 U. Haw. L. Rev. 755, 770, 770 n.109 (2011) ("laboratory-grade analytical balances are typically far more precise than plus/minus several grams" and need less frequent calibration than gas chromatograph/mass spectrometers; both devices were used in Manewa's case). "[T]he accuracy of the scale is not as critical as it would be if the measured weight were barely above the

---

[9] Defense counsel questioned Oshiro regarding the "certain margin of error or uncertainty" in the scientific tests he administered, first beginning with the identification tests. Then the following cross-examination occurred:

> [CHOI:] And there's also uncertainty with respect to the balances; correct?
>
> [OSHIRO:] Yes.
>
> [CHOI:] Does the level or range, I don't know what the exact word is, of uncertainty, is that listed anywhere in the reports that you submitted?
>
> [OSHIRO:] No.
>
> Re-direct produced the following:
>
> [DPA:] You were asked some questions about uncertainty with the balances. Could you explain what that means?
>
> [OSHIRO:] (Indecipherable) equipment have inherently an uncertainty, a plus or minus value. Usually the uncertainty is just going to be a percentage, usually less than 1 percent (indecipherable). I don't know (indecipherable).
>
> [DPA:] And you were asked I believe whether in 2013 you would document the uncertainty on your report; is that correct?
>
> [OSHIRO:] There was no requirement at the time to document uncertainty on this.

statutory threshold, and consequently, the required foundation may be somewhat less stringent." State v. Barber, 340 P.3d 471, 475 (Idaho Ct. App. 2014). Here, the net weight was seven times – 700 percent – more than what was necessary to sustain a conviction under HRS § 712-1249.5. Choi presents no support for the notion that lack of adherence to some hypothetical manufacturer's instruction would produce such a great margin of error.

Choi's argument that there was not proper foundation laid for Oshiro's testimony regarding the balance's measurements is inadequate to demonstrate that the result cannot be relied on "as a substantive fact" that Choi possessed more than two pounds of marijuana. The trial court did not abuse its discretion when it admitted Oshiro's testimony regarding the weight of the marijuana.

3. Choi challenges the sufficiency of the evidence supporting the jury's verdict of his guilt.

> When a conviction is challenged based on the sufficiency of the evidence, the test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Griffin, 126 Hawai'i 40, 56, 266 P.3d 448, 464 (App. 2011) (quoting State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998)) (internal quotation marks omitted). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (internal quotation marks and ellipsis omitted).

Choi first contends that there was insufficient evidence to find him guilty of the charges because the State did not elicit testimony that the evidence was "from the genus cannabis."

The Promotion charge calls for conviction where the defendant "knowingly possesses marijuana having an aggregate weight of two pounds or more," HRS § 712-1249.5(1)(a), and marijuana is defined as "any part of the plant (genus) cannabis, whether growing or not, including the seeds and the resin, and every alkaloid, salt, derivative, preparation, compound, or

mixture of the plant, its seeds or resin[.]" HRS § 712-1240 (1993).

Here, police officers testified that they confiscated "green leafy substance," including marijuana "shake." Sergeant Lee and Detective Akina both testified that they were both trained to identify marijuana, and they recovered what appeared to be marijuana. Moreover, Oshiro testified that he conducted three tests that are generally accepted in the scientific community on the "plant material," and based upon the tests, the substances seized from Choi's car and home were marijuana.

State v. Ahina, 133 Hawai'i 449, 329 P.3d 354, No. CAAP-11-0000132, 2014 WL 2949405 (App. Jun. 30, 2014) (SDO), relied upon by Choi, is inapposite. There, the State conceded there was insufficient evidence to convict Ahina, because the evidence produced at trial showed substance in pipe tested positive for tetrahydrocannabinol, also known as THC, but there was no evidence that Ahina possessed part of a marijuana plant. Ahina at *2. The statutory definition of marijuana expressly excludes "hashish, [THC], and any alkaloid, salt, derivative, preparation, compound, or mixture, whether natural or synthesized, of [THC]." HRS § 712-1240; see State v. Choy, 4 Haw. App. 79, 89, 661 P.2d 1206, 1213 (1983) ("One who is in possession of identifiable parts of the plant, alone or mixed with other substances, can only be prosecuted for possession of marijuana, while one who possesses THC separate from the plant is in possession of a harmful drug and can be prosecuted [under HRS § 712-1245, and subject to stricter penalties,] accordingly.").

Notwithstanding Choi's argument on appeal that there was error where no testimony referenced the genus cannibis, the taxonomic name for the plant from which marijuana is derived, there was substantial evidence by which a reasonable person of reasonable caution could find that the recovered substances were "marijuana," the drug prohibited by statute.

Choi next contends that there was insufficient evidence to support a conviction because "the State did not elicit any testimony of weight [of the marijuana] in avoirdupois ounces." Oshiro testified to the formula to convert grams to avoirdupois

9

ounces, and avoirdupois ounces to pounds. Although Oshiro did not specify that he was converting to "avoirdupois ounces," it is clear that Oshiro was not converting a troy ounce, an apothecaries' ounce, a fluid ounce, or any other type of ounce other than an avoirdupois ounce in rendering the weight of the marijuana seized here. Here, the plant material was a solid, measured in grams, and converted by an expert at trial into pounds, the unit of weight specified in HRS § 712-1249.5. Thus, there was sufficient evidence supporting a finding of the attendant circumstances here, that the marijuana seized weighed more than two pounds.

Choi's last argument on appeal is that there was insufficient evidence that he possessed the marijuana found in his home and car. Although a search warrant was issued for Choi's person, there was no evidence adduced at trial that Choi was (a) searched and (b) found to be in actual possession of marijuana. Therefore, in order to have found Choi guilty of possession, the jury must have found he constructively possessed the marijuana. See State v. Foster, 128 Hawai'i 18, 26-27, 282 P.3d 560, 568-69 (2012) ("possession of an item may be either actual or constructive").

"Constructive possession 'reflects the common sense notion that an individual may possess a controlled substance even though the substance is not on his [or her] person at the time of arrest.'" State v. Moniz, 92 Hawai'i 472, 475, 992 P.2d 741, 744 (App. 1999) (quoting State v. Mundell, 8 Haw. App. 610, 619, 822 P.2d 23, 28 (1991)). "It expands the scope of possession statutes to encompass those cases where actual possession at the time of arrest cannot be shown but where the inference that there has been actual possession is strong." Id. at 476, 992 P.2d 745 (quoting Commonwealth v. Jackson, 659 A.2d 549, 553-54 (Pa. 1995) (internal quotation marks and brackets omitted)). In instances where there is no actual possession of the contraband, to find constructive possession, the State "must show a sufficient nexus between the accused and the [item] to permit an inference that the accused had both the power and the intent to exercise dominion and control over the [item]. Mere proximity is not

10

enough." Foster, 128 Haw. at 26, 282 P.3d at 568 (quoting Moniz, 92 Hawai'i at 476, 992 P.2d at 745) (brackets in original).

> Factors that have been considered by other courts as inferring a nexus between a defendant and the drugs found include:
>
> > 1) the defendant's ownership of . . . or right to possession of the place where the controlled substance was found; 2) the defendant's sole access to the [place where the controlled substance was found]; 3) defendant under the influence of narcotics when arrested; 4) defendant's presence when the search warrant executed; 5) the defendant's sole occupancy of the [place where the controlled substance was found] at the time the contraband is discovered; 6) the location of the contraband . . .; 7) contraband in plain view; 8) defendant's proximity to and the accessibility of the narcotic; 9) defendant's possession of other contraband when arrested; 10) defendant's incriminating statements when arrested; 11) defendant's attempted flight; 12) defendant's furtive gestures; 13) presence of odor of the contraband; 14) presence of other contraband or drug paraphernalia, not included in the charge; 15) place drugs found was enclosed.
>
> Wallace v. State, 932 S.W.2d 519, 524 n. 1 (Tex. App. 1995). Other factors that have been deemed relevant include . . . the large quantity of drugs found, [State v. Brown, 80 N.J. 587, 404 A.2d 1111, 1119 (1979)]; . . . ; the fact that the defendant had previously sold drugs, Dodson v. State, 213 Md. 13, 130 A.2d 728 (1957) . . . and the fact that the drugs were found among the defendant's personal belongings. State v. Baxter, 285 N.C. 735, 208 S.E.2d 696 (1974).
>
> . . . .
>
> In situations where a defendant does not have exclusive possession or control of the place where drugs are found, therefore, it is necessary for the State to show facts that would permit "a reasonable mind to conclude that [the] defendant had the intent and capability to exercise control and dominion over the drugs." State v. Carr, 122 N.C. App. 369, 470 S.E.2d 70, 73 (1996). That is, the evidence "must raise a reasonable inference that the defendant was engaged in a criminal enterprise and not simply a bystander." State v. Fox, 709 P.2d 316, 320 (Utah 1985). Proof of the defendant's knowledge of the presence of drugs and the defendant's ownership or right to possession of the place where the drugs were found, alone, are insufficient to support a finding of the exercise of dominion and control. Other incriminating circumstances must be present to buttress the inference of knowing possession and provide the necessary link between a defendant and illegal drugs.

Moniz, 92 Haw. at 476-77, 992 P.2d at 745-46 (some ellipses in original).

Here, evidence produced at trial showed the marijuana and zip-lock bag paraphernalia were found in the vehicle registered to Choi and insured in his name, and Choi was alone in

11

his car when the search warrants were executed. Although Choi's daughter, and sometimes her mother, resided with Choi, the apartment where the marijuana and baggies, pipes, ballast, and scale were found was Choi's apartment. Moreover, Choi's daughter denied that the contraband was hers. One of scales was found on what appeared to be Choi's bedroom dresser, given his clothing and other personal effects were found in or on top of the dresser. Choi confessed to the officers executing the search warrant that he had marijuana and when the police went to his home, he led them to closets, where there was marijuana in clear bags, and opened a large opaque container to reveal even more.

The testimony at trial was credible evidence of sufficient quality and probative value to enable a person of reasonable caution to find a sufficient nexus between Choi and the seized drugs from which possession could be inferred. Griffin, 126 Hawai'i at 56, 266 P.3d at 464. Thus, "the necessary link between [the] defendant and illegal drugs" was demonstrated by sufficient evidence, Moniz, 92 Hawai'i at 477, 992 P.2d at 746, and as such Choi's final point on appeal is without merit.

Based upon the foregoing, the October 3, 2016 Judgment of Conviction and Probation Sentence is affirmed.

DATED: Honolulu, Hawai'i, January 27, 2020.

On the briefs:

John Knoebber,
for Defendant-Appellant.

David Blancett-Maddock,
Deputy Prosecuting Attorney,
County of Hawai'i,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge